IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JHEN SCUTELLA, | ) | |
|     Plaintiff | ) | C.A. No. 12-88 Erie |
| | ) | |
| v. | ) | |
| | ) | District Judge Cohill |
| ERIE COUNTY PRISON, et al., | ) | Magistrate Judge Baxter |
|     Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that:

1. The Erie County Defendants' motion to dismiss [ECF No. 25], herein treated as a motion for summary judgment in accordance with Fed.R.Civ.P. 12(d), be granted;

2. Defendant Wexford Health Services, Inc.'s motion to dismiss [ECF No. 47], herein treated as a motion for summary judgment in accordance with Fed.R.Civ.P. 12(d), be granted; and

3. Defendant Peterson's motion to dismiss [ECF No. 50] be granted.

It is further recommended that, pursuant to the authority granted the Court by the Prison Litigation Reform Act, Plaintiff's claims against Defendants Dr. John Doe, L.P.N. Jane Doe, R.N. Jane Doe, and Dan Telega be dismissed.

### II. REPORT

#### A. Relevant Procedural and Factual History

Plaintiff Jhen Scutella, a prisoner formerly incarcerated[1] at the Erie County Prison in Erie, Pennsylvania, instituted this *pro se* civil rights action on March 29, 2012, pursuant to 42 U.S.C.

---

[1] Plaintiff is currently incarcerated at the State Correctional Institution at Albion, Pennsylvania.

1

§ 1983. Plaintiff subsequently filed an amended complaint on July 10, 2012, which superseded the original complaint and is the operative pleading in this case. [ECF No. 19]. Named as Defendants in the amended complaint are Erie County Prison ("ECP"), Wexford Health Services, Inc. ("Wexford"), Gary Peterson, D.O. ("Peterson"), and the following staff members at ECP: Deputy Warden Holliman ("Holliman"); Deputy Warden James Senyo ("Senyo"); Warden James Veshecco ("Veshecco"); Cpl. Wilson ("Wilson"); C.O. Laska ("Laska"); C.O. Carman ("Carman"); C.O. Dempsey ("Dempsey"); C.O. Coverdale ("Coverdale"); C.O. Owens ("Owens"); C.O. Capwill ("Capwill"); C.O. Maczjek ("Maczjek"); Sgt. Houton ("Houton"); Cpl. Dunbar ("Dunbar"); Sgt. Kendizoria ("Kendizoria"); and Adam Diehl ("Diehl"). (All Defendants other than Defendants Wexford and Peterson will be collectively referred to as "Erie County Defendants"). Plaintiff also named as Defendants Dan Telega ("Telega") and three unnamed individuals identified as "Dr. John Doe", "L.P.N. Jane Doe", and "R.N. Jane Doe", none of whom has been served with the amended complaint in this matter.

Plaintiff was committed to ECP on or about August 25, 2011, after being arrested and charged by the City of Erie Police Department with Aggravated Assault, Resisting Arrest, DUI, and numerous motor vehicle code violations. He remained incarcerated at ECP as a pretrial detainee until May 15, 2012, when he was transferred to the State Correctional Institution at Albion, Pennsylvania. (See ECF Nos. 26-1 and 26-2).

In his amended complaint, Plaintiff alleges that while he was incarcerated at ECP, Defendants violated his rights under the first, fourth, fifth, eighth, and fourteenth amendments to the United States Constitution, and retaliated against him for exercising his First Amendment rights. In particular, Plaintiff claims that: (i) he received inadequate medical treatment in violation of his Eighth Amendment rights; (ii) his legal mail was opened without his presence or authorization, and sick call requests went unanswered, in retaliation for his filing of a grievance; (iii) Defendants Dempsey and Coverdale made "sarcastic and unnecessary comments" to him

2

regarding a letter he wrote to the editor of the Erie Times News; (iv) he received a misconduct from Defendant Laska in retaliation for his letter to the editor and his filing of a grievance; (v) Defendant Dempsey locked him in his cell "as a form of punishment," without a hearing, in violation of his due process rights and in retaliation for his filing of a grievance; (vi) he and all other inmates on his cell block were locked down from 7:30 pm to 10:00 pm on April 20, 2012, in violation of his Eighth Amendment rights; (vii) Defendant Wilson performed a random search of his cell in violation of his Fourth Amendment rights; (viii) Defendants Coverdale, Maczjek, and Wilson conspired to give him a misconduct and had him placed on a "no move list" and moved to an observation cell for eight hours without due process; (ix) Defendants Capwill and Owens gave him a second misconduct for violating visitation procedures, without due process; (x) After the second misconduct, Defendant Coverdale made him exchange his prison uniform for a smaller size to humiliate him in retaliation for filing grievances; and (xi) Defendants Holliman and Veshecco conspired "with other employees" to deny him his right to due process and allow cruel and unusual punishment. In addition, Plaintiff asserts pendent state law claims of medical negligence, emotional and mental distress, official oppression, and conspiracy. As relief for his claims, Plaintiff seeks declaratory and injunctive relief and monetary damages.

On August 7, 2012, the Erie County Defendants filed a motion to dismiss [ECF No. 25], arguing, *inter alia*, that a majority of Plaintiff's claims should be dismissed because Plaintiff failed to exhaust his administrative remedies with regard to such claims, and that all of Plaintiff's claims should be dismissed in any event because they fail to state claims upon which relief may be granted. Plaintiff filed a response to the Erie County Defendants' motion on August 14, 2012. [ECF No. 30]. Defendant Wexford subsequently filed its own motion to dismiss on September 4, 2012 [ECF No. 47], also claiming that Plaintiff's claims should be dismissed due to Plaintiff's failure to exhaust administrative remedies and/or his failure to state claims upon which relief may be granted. Defendant Peterson has since filed his own motion to dismiss [ECF No.

50], in which he joins and incorporates by reference Defendant Wexford's motion and brief in support thereof.

Because both the Erie County Defendants and Defendant Wexford attached a number of exhibits to their motions to dismiss upon which they rely in seeking dismissal of Plaintiff's claims, this Court issued a text Order on September 7, 2012, notifying all parties that, in accordance with Fed.R.Civ.P. 12(d), Defendants' motions will be treated as motions for summary judgment pursuant to Rule 56, and ordering Plaintiff to file an appropriate response to Defendant Wexford's motion, as well as a supplement to his prior response to the Erie County Defendants' motion, if so desired, by October 7, 2012. Plaintiff has since failed to file either a response to Defendant Wexford's motion or a supplement to his response to the Erie County Defendants' motion. Because ample time for Plaintiff's response(s) has now passed, this matter is ripe for consideration.

### B.    Standards of Review

#### 1.    Summary Judgment

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

4

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56(c). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v.

5

Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007). A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247-249.

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### C.     Exhaustion

#### 1.     The Exhaustion Requirement

Both the Erie County Defendants and Defendants Wexford and Peterson argue that some or all of the claims against them should be dismissed for failure to comply with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until *such administrative remedies as are available* are exhausted.

Id[2] (emphasis added).

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[3]  The exhaustion requirement is not a technicality, rather it is

---

[2] It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 216 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

[3]

federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[4]

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) (" Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

---

Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

4

There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

### 2. The Administrative Process Available to Erie County Inmates

No analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218.

ECP's Inmate Manual, which was provided to Plaintiff at the time of commitment, outlines the grievance procedure inmates are required to follow. (See ECF No. 26-3). First, an inmate desiring to file a formal grievance must submit a written grievance form to the pod counselor within fifteen (15) days after a "potentially grievable event has occurred." (ECF No. 26-4 at p. 35 (internal p. 32)). The grievance is then submitted to the Warden's designee for investigation and response. In the event the grievance is not resolved, the inmate may file an appeal to the Warden within five (5) days of his receipt of the response from the Warden's designee. (Id.). The Warden will then issue a final decision affirming, modifying, suspending or reversing the grievance response. (Id.).

### 3. Analysis

In support of their motion to dismiss, the Erie County Defendants have submitted the Affidavit of Michael Holman, Deputy Warden at ECP, who is responsible for responding to inmate grievances at ECP. [ECF No. 26-13]. Deputy Holman declares that during Plaintiff's

confinement at ECP from August 25, 2011 to May 16, 2012, Plaintiff filed the following grievances, copies of which are attached to the Erie County Defendants' Brief:

1. Grievance No. 1347, dated January 19, 2012, in which Plaintiff complained that he was receiving inadequate medical treatment for jaw pain, ankle pain, blurred vision, headaches, and painful urination (See ECF No. 26-5);

2. Grievance No. 1350, dated January 30, 2012, in which Plaintiff complained that a piece of legal mail was inadvertently opened by a correctional officer (See ECF No. 26-6);

3. Grievance No. 1353, dated February 23, 2012, in which Plaintiff complained that he submitted two medical request forms on February 6, 2012 and February 14, 2012, respectively, which were allegedly ignored in retaliation for his filing of Grievance No. 1347 (See ECF No. 26-7);

4. Grievance No. 1357, dated March 29, 2012, in which Plaintiff complained that he was given a misconduct by Defendant Laska, at the direction of Defendant Kendziora, in retaliation for a letter to the editor Plaintiff wrote to the Erie Times News (See ECF No. 26-8);

5. Grievance No. 1005, dated April 27, 2012, in which Plaintiff complained that Defendant Dempsey locked him down for shaking his cell door without first giving him a minor misconduct ticket (See ECF No. 26-9);

6. Grievance No. 1006, dated April 27, 2012, in which Plaintiff complained that the entire cell block was locked down because the inmates did not lock up fast enough after a fight occurred on the block (See ECF No. 26-10);

7. Grievance No. 1007, dated April 27, 2012, in which Plaintiff complained about the grievance procedure and alleged that Defendant Holman overlooked various issues raised by him in prior grievances (See ECF No. 10-11); and

8. Grievance No. 1016, dated May 7, 2012, in which Plaintiff complained that Deputy Holman was unjustly denying his grievances and was conspiring with other correctional officers to deprive him of his constitutional rights (See ECF No. 10-12).

Deputy Holman then certifies in his Affidavit that Plaintiff failed to appeal the denial of Grievance Nos. 1347, 1350, 1353, 1357, 1007, and 1016, and, thus, failed to exhaust his administrative remedies with regard to those grievances. (ECF No. 26-13 at ¶ 7). As a result, the only grievances that were appealed and fully exhausted by Plaintiff were Grievance Nos. 1005 and 1006.

As noted earlier, Plaintiff has failed to supplement his response to the Erie County Defendants' motion to dismiss and, thus, the record is devoid of any affidavit or documentary evidence contradicting Deputy Holman's affidavit. The only opposition offered by Plaintiff in response to Defendants' assertion that he failed to exhaust his administrative remedies is his argument that he "was not made aware of the appeal process until March or February of 2012" and that, at such time, he "was not allowed to appeal any older grievances because the 15 days had passed." (ECF No. 30, Plaintiff's Response, at p. 1). The record is clear, however, that Plaintiff received a copy of the Inmate Handbook containing ECP's grievance procedures on or about August 26, 2011, upon his commitment to ECP. (See ECF No. 26-3). Thus, Plaintiff's plea of ignorance regarding the grievance appeal process falls on deaf ears. Plaintiff also argues that grievance forms were not readily available at ECP, which allegedly compromised his ability to file timely appeals; yet, Plaintiff apparently had no difficulty filing the grievances themselves in a timely manner. Furthermore, it is interesting to note that Plaintiff filed timely appeals of the denials of two of the three grievances he filed on April 27, 2012, but did not appeal the third, nor did he appeal the later grievance he filed on May 7, 2012. In short, there is no evidence to

support Plaintiff's self-serving, conclusory assertions that he was somehow prevented from exhausting his administrative remedies on those grievances he failed to appeal.

Based on the foregoing, summary judgment should be entered in favor of Defendants on all of Plaintiff's claims other than those specified in his exhausted grievances bearing Grievance Nos. 1005 and 1006. Specifically, the only claims on which summary judgment should not be entered for failure to exhaust administrative remedies are Plaintiff's Fourteenth Amendment due process claim against Defendant Dempsey[5] for locking Plaintiff in his cell without a hearing "as a form of punishment," and Plaintiff's claim that he and all other inmates on his cell block were locked down on the evening of April 20, 2012, as a form of corporal punishment. The latter claim is asserted by Plaintiff as an Eighth Amendment claim; however, because Plaintiff was a pretrial detainee at the time of the incident in question, the claim will be considered a due process claim. See Bell v. Wolfish, 41 U.S. 520, 530 (1979); Hubbard v. Taylor, 399 F.3d 150, 157-58 (3d Cir. 2005). The merits of Plaintiff's remaining due process claims will now be addressed.

### D.     Discussion

#### 1.     Due Process Claims

Plaintiff claims that his due process rights were violated when Defendant Dempsey locked him down for shaking his cell door without first giving him a minor misconduct ticket or

---

[5] In his amended complaint, Plaintiff also asserts that Defendant Dempsey locked him in his cell as a form of retaliation for his filing of grievances; however, a claim of retaliation was not asserted in the underlying Grievance No. 1005 and, thus, was not properly exhausted.

12

a hearing. The grievance documents pertaining to this incident indicate that Plaintiff was locked down in his cell for approximately two hours and that Defendant Dempsey did not issue a minor misconduct because he did not believe the infraction was serious enough to be put on Plaintiff's record. (ECF No. 26-9 at pp. 1- 3). In addition, Plaintiff claims that he was subject to "corporal punishment" when he and all other inmates on his cell block were locked down on the evening of April 20, 2012, after a fight occurred. Neither of these claims states a violation of Plaintiff's due process rights, either procedurally or substantively.

"Due process" is guaranteed through the fourteenth amendment to the United States Constitution. The pertinent language of the Amendment provides as follows:

> Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; <u>nor shall any State deprive any person of life, liberty, or property, without due process of law</u>; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. Amend. XIV, § 1 (emphasis added).

In general, the Due Process Clause was promulgated to secure the individual from the arbitrary exercise of the powers of government.

### a. Procedural Due Process

The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing, before the government can deprive an individual of a liberty or property interest. To establish a procedural due process

13

violation, a person must demonstrate that he has been deprived of a constitutionally-protected property or liberty interest. Daniels v. Williams, 474 U.S. 327, 339 (1986). If a person does not have a constitutionally-protected interest, he or she is not entitled to the procedural protections afforded by the Due Process Clause.

A constitutionally-protected interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation. Hewitt v. Helms, 459 U.S. 460, 466 (1983). In particular, "States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Here, Plaintiff cannot show that being locked down in his cell for a period of two hours, or for an evening, was an "atypical and significant hardship in relation to the ordinary incidents of prison life," such that a liberty interest was created. See Armstrong v. Brooks, 283 Fed.Appx. 906, 909-10 (3d Cir. 2008)(holding that a "sanction of thirty days cell restriction is in the range of conditions that do not violate a protected interest under Sandin"). Thus, Plaintiff cannot support a claim based upon a violation of his procedural due process rights.

### b. Substantive Due Process

The constitutional right to "substantive due process" protects individuals against arbitrary

governmental action, regardless of the fairness of the procedures used to implement them.[6] The Supreme Court has declined to set forth a precise rule that defines the scope of impermissible "arbitrary" conduct for purposes of applying the substantive component of the Due Process Clause. Nonetheless, the Court clarified that governmental conduct does not violate a person's substantive due process rights unless it amounts to an abuse of official power that "shocks the conscience." County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).

Plaintiff's allegations contain no suggestion of arbitrary or capricious behavior by the Defendants that would rise to the level of a constitutional violation. Plaintiff does not allege that he was locked down in his cell based on unconstitutional criteria such as his race, religion, or ethnicity. Moreover, the periods of lock down at issue were so brief as to be inconsequential within a prison setting, and certainly do not shock the conscience. Thus, Plaintiff has failed to demonstrate that he is entitled to relief under the substantive prong of the Due Process Clause. Accordingly, summary judgment should be entered in favor of Defendant Dempsey and the ECP Defendants on Plaintiff's remaining due process claims.

### 3. **Pendent State Law Claims**

In addition to his constitutional claims, Plaintiff has also asserted claims of medical negligence, emotional and mental distress, official oppression, and conspiracy. These are

---

[6] See also Collins v. Harker Heights, 503 U.S. 115, 126 (1992) (the Due Process Clause was intended to prevent government officials from abusing power, or employing it as an instrument of oppression); Wolff v. McDonnell, 418 U.S. 539, 558 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of

pendent state law claims under Pennsylvania law, over which this Court is not required to exercise jurisdiction absent the existence of a cognizable federal claim. Since this Court has already determined that Plaintiff's federal claims under 42 U.S.C. § 1983 must fail as a matter of law, this Court does not have an independent basis on which to exercise jurisdiction over Plaintiff's state law claims. As a result, Plaintiff's pendent state law claims of medical negligence, emotional and mental distress, official oppression, and conspiracy, should be dismissed.

### 3. Prison Litigation Reform Act

The Prison Litigation Reform Act provides that:

> (b) Grounds for dismissal– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint– (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C.A. § 1915A. Under Section 1915A, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but it is required to do so. Nieves v. Dragovich, 1997 WL 698490, at *8 (E.D. Pa. 1997)("Under provisions of the Prison Litigation Reform Act codified at 28 U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e(c), the district courts are required, either on the motion of a party or sua sponte, to dismiss any claims made by an inmate that are frivolous or fail to state a claim upon which relief could be granted.").

---

government.").

The PLRA also amended the statutory provisions with respect to actions brought by prisoners who are proceeding in forma pauperis. See 28 U.S.C. §1915(e)(2)[7]. Under this provision as well, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but it is required to do so by mandatory language. See, e.g., Keener v. Pennsylvania Bd. of Probation and Parole, 128 F.3d 143, 145 n.2 (3d Cir. 1997) (describing 28 U.S.C. § 1915(e)(2)(B) as "the PLRA provision mandating sua sponte dismissal of in forma pauperis actions that are frivolous or fail to state a claim."). In performing a court's mandated function of *sua sponte* reviewing a complaint under 28 U.S.C. § 1915(e) and under § 1915A to determine if it fails to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). See, e.g., Tucker v. Angelone, 954 F. Supp. 134, 135 (E.D. Va. 1977) ("Under 28 U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e(c) the courts are directed to dismiss any claims made by inmates that 'fail to state a claim upon which relief could be granted'").

As noted earlier, the following Defendants were never served in this case, in contravention of this Court's orders, and none of them has had an attorney enter an appearance on his or her behalf: Defendant Telega, "Dr. John Doe", "L.P.N. Jane Doe", and "R.N. Jane Doe." As a result, these Defendants should be dismissed from this case pursuant to Rule 4(m) of the

---

[7] Title 28 U.S.C. §1915(e)(2) provides: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--(B) the action or appeal--(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

Federal Rules of Civil Procedure, as they were not served within 120 days of the date(s) they were named as Defendants in this case.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that:

1. The Erie County Defendants' motion to dismiss [ECF No. 25], herein treated as a motion for summary judgment in accordance with Fed.R.Civ.P. 12(d), be granted;

2. Defendant Wexford Health Services, Inc.'s motion to dismiss [ECF No. 47], herein treated as a motion for summary judgment in accordance with Fed.R.Civ.P. 12(d), be granted; and

3. Defendant Peterson's motion to dismiss [ECF No. 50] be granted.

It is further recommended that, pursuant to the authority granted the Court by the Prison Litigation Reform Act, Plaintiff's claims against Defendants Dr. John Doe, L.P.N. Jane Doe, R.N. Jane Doe, and Dan Telega be dismissed.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file objections will waive the right to appeal. Brightwell v. Lehman, 637 F. 3d 187, 193 n. 7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: November 26, 2012

cc: The Honorable Maurice B. Cohill
United States District Judge